WOOD BALMFORTH LLC
Mary Anne Q. Wood (3539)
Jared M. Asbury (12435)
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061
Email: mawood@woodbalmforth.com
         jmasbury@woodbalmforth.com

*Attorneys for Defendant Seagull Book & Tape, Inc.*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| SAMUEL BURNINGHAM,<br><br>    Plaintiff<br><br>v.<br><br>SEAGULL BOOK & TAPE, INC.,<br><br>    Defendant | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Civil No. 2:17-cv-00779-CW<br><br>Judge Clark Waddoups |

### Relief Requested

Defendant Seagull Book & Tape, Inc. ("Seagull Book"), by and through its undersigned counsel, moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) and DUCivR 7-1, for an order dismissing all allegations and causes of action housed in Plaintiff Samuel Burningham's ("Burningham") Complaint.

### Grounds for Relief

Burningham and his affiliates have filed multiple lawsuits against Seagull Book regarding various Seagull Book locations.  Each lawsuit brings a single cause of action against Seagull Book under Title III of the Americans with Disabilities Act ("ADA").  Title III of the

ADA provides a plaintiff injunctive relief, not monetary damages.  Seagull Book moves to dismiss the allegations in the Complaint under Fed. R. Civ. P. 12(b)(1) because Seagull Book has remediated all alleged violations, Burningham lacks standing, Burningham has failed to allege individualized harm, and Burningham has failed to establish standing independent of his tester status.

The U.S. Supreme Court and the Tenth Circuit have both held that an ADA claim may be rendered moot if the defendant ceases the complained-of conduct and can show that the conduct is not reasonably expected to recur.  The Tenth Circuit has also held that an ADA plaintiff, including ADA "testers," must satisfy traditional standing requirements imposed on plaintiffs in order to maintain standing before the court.  Based on the following Memorandum, Burningham's claims are moot due to Seagull Book's remediation and showing of likelihood of non-recurrence.  Burningham does not have standing because he has not established a reasonable likelihood of returning to the Springville location of Seagull Book and is not the real party-in-interest.

Accordingly, Seagull Book respectfully requests that this Court dismiss this action.

## INTRODUCTION

The Complaint to begin this matter was filed on July 12, 2017.[1]  The Complaint alleges ADA violations at the Seagull Book located at 500 South 1795 West, Ste B1, Springville, Utah 84663 ("Springville Seagull Book"), for failure to provide a clear width of walking surfaces in aisles and pathways, and failure to provide operable parts of bathroom door hardware that are operable with one hand and do not require right grasping, pinching or twisting of the wrist with no more than 5 pounds of operable force.[2]

The most troubling aspect of this matter is that it is likely part of a scheme orchestrated by an out-of-state corporation, Litigation Management and Financial Services ("LMFS"), that is using local disabled individuals and their attorneys as fronts to extort money from Utah businesses.[3]  In less than four months, 120 complaints have been filed under Burningham's name against various Utah businesses alleging very similar, or in some instances the same, violations using a carbon copy complaint, changing only the names of parties, addresses, some paragraph numbering, and, sometimes, changing the alleged ADA violations contained in paragraph 34 of each complaint.[4]  These complaints are virtual carbon copies of complaints filed under the name

---

[1]    Compl., Docket No. 2.

[2]    Compl. at ¶ 34.

[3]    *See generally* Debra Cassens Weiss, *Serial ADA suits operated like 'a carnival shell game,' depriving plaintiff of proceeds, judge says*, ABA JOURNAL (July 13, 2017), http://www.abajournal.com/news/article/serial_ada_suits_operated_like_a_carnival_shell_game_depriving_plaintiff _of/?utm_source=maestro&utm_medium=email&utm_campaign=weekly_email.  A copy of the article is attached hereto as Exhibit A.

[4]    These complaints under Burningham's name, and using Attorney Michael P. Studebaker ("Attorney Studebaker") as his counsel, began being filed in early May of 2017.  Exhibit B is a list of these ADA cases filed in Burningham's name.  Notably, Seagull Book is not the only defendant fielding multiple claims from Burningham using this boilerplate complaint.  *See e.g., Burningham v. Cafe Rio, Inc.,* 2:17-cv-00342; *Burningham v. Wal-Mart Stores,* 2:17-00777; and *Burningham v. Billings Distribution,* 2:17-cv-00810.

of two other Utah serial plaintiffs: Tammy Shelton (22 ADA filed cases since the beginning of 2017)[5] and Trevor Kelley (111 ADA cases filed since the beginning of 2017, including an action against Seagull Book)[6], and a Nevada serial plaintiff Kevin Zimmerman[7] - all believed to be affiliated with LMFS.

The sheer volume of the filings under the names of Burningham and his cohorts, demonstrates that these lawsuits are not designed to further the legitimate purposes of the ADA, and that Burningham's only basis to assert standing, if any, is that of a tester.  Rather, these lawsuits aim to line the pockets of attorneys and their servicing company (LMFS) without due regard to the legitimate rights and claims of the disabled.[8]

When challenging a complaint under Fed. R. Civ. P. 12(b)(1), a party may challenge the complaint either facially or factually.  Seagull Book presents a factual attack to Burningham's claims, arguing that by voluntarily remediating the claimed violations alleged in the Complaint, Burningham's claims under the ADA are made moot.  Where the defendant has voluntarily ceased its alleged offending conduct and can prove that there is no reasonable expectation for the conduct to recur, a court should dismiss the ADA claims as moot.  Seagull Book also factually attacks Burningham's standing under Rule 12(b)(1).

---

[5]     Exhibit C is a list of these ADA cases filed in Shelton's name.  Attorney James Ord represents Shelton in almost all of his ADA cases (he replaced attorney Jonathan Felt on most of them, but it appears Felt is still representing Shelton on some of them).
[6]     Exhibit D is a list of these ADA cases filed in Kelley's name.  Attorney James Ord represents Kelley in all of his ADA-related cases.
[7]     The Nevada Attorney General recently moved to intervene in the Zimmerman cases.  *See Zimmerman v. GJS Group Inc.*, Case No. CV:2-17-00304-GMN-GWF.
[8]     *See Samuel Burningham v. TVI, Inc. DBA Savers*, 2:17-cv-00363-TC, Defendant's Motion to Dismiss, filed June 28, 2017, Docket No. 5, at 2-3 ("Savers Lawsuit").

Where Burningham's claims are mooted by Seagull Book's voluntary cessation, Burningham is not entitled to attorneys' fees because he is not the prevailing party under the ADA. In order to be a prevailing party, there must be a judgment rendered on the merits. In a dismissal, such as is appropriate in this case, no such judgment is rendered, meaning Plaintiff cannot be a prevailing party.

For the reasons detailed below, Seagull Book's remediation moots Burningham's claims, Burningham lacks standing to bring his claims, Burningham is not the real party-in-interest, and Burningham is not entitled to attorneys' fees. Accordingly, the Court should dismiss the Complaint with prejudice.

## COMPLAINT ALLEGATIONS AND FACTUAL BACKGROUND

### A. Pertinent Complaint Allegations.

On July 12, 2017, the Complaint was filed in Burningham's name against Seagull Book, alleging the following ADA violations at the Springville Seagull Book: (i) failure to provide the clear width of walking surfaces in aisles and pathways no less than 36 inches (915 mm); and (ii) failure to provide operable parts of bathroom door hardware that are operable with one hand and do not require tight grasping, pinching or twisting of the wrist with no more than 5 pounds of operable force.[9] Pertinent to this Motion, the Complaint alleges the following facts:[10] (1) Burningham visited the location of Seagull Book located at 500 South 1795 West, Ste B1, Springville, UT 84663, on or about May 15, 2017;[11] (2) Burningham has a "disability which substantially limits major life activities" and that he "requires the use of a wheelchair;"[12]

---

[9]      Compl. at ¶ 34.
[10]     For purposes of this Motion, Seagull Book assumes the facts listed in this Motion are true, but does not admit or concede to any of the facts in the Complaint.
[11]     Compl. at ¶¶ 3, 33.
[12]     *Id*. at ¶ 10.

(3) Burningham "travels throughout Utah including, in particular, the communities in and surrounding Salt Lake City, Utah;"[13] (4) that Burningham "was prevented from the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of the Springville Seagull Book and that Seagull Book is "discriminate[ing] against Plaintiff;"[14]; (5) "Defendant has discriminated against Plaintiff … in that it has failed to make its PPA fully accessible to, and independently usable by, individuals who are disabled;"[15]; (6) "Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its PPA fully accessible to, and independently usable by, individuals who are disabled;"[16] and (7) "Defendant has failed to comply with the mandates of the ADA."[17]

### B.   Seagull Book's Remediation.

An uplifting and peaceful atmosphere is important to Seagull Book and its customers. Upon receiving the Complaint, Seagull Book investigated the allegations and undertook remediation efforts, where such were warranted, and made any and all repairs necessary to ensure its customers with disabilities are afforded full and equal enjoyment of the facilities and services offered at the Springville Seagull Book.[18]  Further, Seagull Book has taken actions to ensure compliance with the ADA at its other locations.[19]

Specific to the Springville Seagull Book, Seagull Book has ensured and corrected (if necessary) the width of all walking surfaces in aisles and pathways to be no less than 36 inches,

---

[13]      *Id*. at ¶ 6.
[14]      *Id*. at ¶¶ 34, 44.
[15]      *Id*. at ¶ 37.
[16]      *Id*. at ¶ 38.
[17]      *Id*. at ¶ 46.
[18]      Declaration of Jeff Wheeler ("Wheeler Declaration") at ¶¶ 6-9, filed contemporaneously herewith and incorporated as if set forth fully herein.
[19]      Wheeler Decl. at ¶ 11.

and corrected the operable parts of the bathroom door hardware (removing superfluous non-conforming hardware, as it already had conforming hardware installed) so that they are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist with no more than 5 pounds.[20]

All repairs that have been made are permanent.  Seagull Book has no intent to reverse the repairs it expended resources to complete.[21]

---

[20]     Wheeler Decl. at ¶¶ 8-9.
[21]     Wheeler Decl. at ¶ 9.

## ARGUMENT

### I.     12(B)(1) MOTION TO DISMISS STANDARD.

In this matter, dismissal is proper under Rule 12(b)(1) because this Court lacks subject matter jurisdiction where Seagull Book has mooted Burningham's claims under the ADA and where Burningham lacks standing.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."[22]  "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.  A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[23]  "Without a live, concrete controversy, a federal court lacks jurisdiction to consider the parties' claims."[24]  A past injury does not render a case automatically "live" throughout the pendency of the litigation. "When a party seeks only equitable relief . . . past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects."[25]

Motions to dismiss under Rule 12(b)(1) take two different forms: facial and factual.[26]  In a facial attack, "a district court must accept the allegations in the complaint as true."[27]  In a factual attack, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."[28]  In a factual attack, "a district court may

---

[22]     *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 277 (1990).
[23]     *Utah Animal Rights Coalition v. Salt Lake City*, 371 F.3d 1248, 1256 (10th Cir. 2004) (internal citations omitted); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013) (explaining the "actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation").
[24]     *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 720 (10th Cir. 2008) (internal quotation marks omitted).
[25]     *Chambers v. Melmed*, 141 Fed. Appx. 718, 720 (10th Cir. 2005).
[26]     *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).
[27]     *Id.*
[28]     *Id.* at 1003.

not presume the truthfulness of the complaint's factual allegations" and may exercise broad

discretion to, *inter alia*, consider affidavits and other documents to resolve the disputed

jurisdictional facts.[29]   When a factual attack is made, the "court's reference to evidence outside

the pleadings does not convert the motion to a Rule 56 motion."[30]   In the instant matter, Seagull

Book attacks the Complaint factually, and this Motion is not converted to a Rule 56 motion or a

Rule 12(b)(6) motion.

Importantly, to survive Seagull Book's Motion, Burningham bears the burden of proving

subject matter jurisdiction by a preponderance of the evidence.[31]   Burningham must provide more

than conclusory statements and boilerplate, formulaic restatements of the elements of a claim.[32]

## II.   BURNINGHAM'S CLAIMS ARE MOOT BECAUSE SEAGULL BOOK REMEDIATED THE CLAIMS AND THE VIOLATIONS ARE NOT REASONABLY EXPECTED TO RECUR.

### A.   Mootness Standard.

"[U]nder certain circumstances, a claim under the ADA can become moot if a defendant

remedies the access barrier during the pendency of the litigation."[33]   Voluntary cessation is one

such circumstance.   To determine whether a plaintiff's claim is moot based on a defendant's

voluntary cessation, the court evaluates whether "subsequent events made it absolutely clear that

the allegedly wrongful behavior could not reasonably be expected to recur."[34]   Where a

---

[29]      *See id.*

[30]      *Id.*

[31]      *Bacon v. Walgreen Co.,* 91 F. Supp. 3d 446, 449 (E.D.N.Y. 2015) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

[32]      *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[33]      *Bacon*, 91 F. Supp. 3d at 451 (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011)).

[34]      *Friends of the Earth v. Laidlaw Envt'l Servs*., 528 U.S. 167, 189 (2000); *see also Chambers v. Melmed*, 141 Fed.Appx. 718, 720 (10th Cir. 2005) ("A request for prospective relief can be mooted by a defendant's voluntary cessation of the challenged activity if it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

defendant's voluntary conduct removes the live controversy, a federal court lacks subject matter jurisdiction.  The burden rests on the party asserting mootness to prove that the wrongful behavior "could not reasonably be expected to recur."[35]

Here, Seagull Book has voluntarily remediated any alleged ADA violations in the Complaint that actually exist, and has established an ongoing program such that the violations are not reasonably expected to recur.[36]  Thus, Burningham's claims are mooted, and the controversy is no longer live, depriving this Court of subject matter jurisdiction.

### B.      Seagull Book Promptly Remediated Existing Violations, Removing Any Ongoing Case or Controversy.

Immediately following service of the Complaint, Seagull Book investigated the allegations, and to the extent it confirmed any violations, it remediated the alleged ADA violations.[37]  For example, regarding the width of walking surfaces in aisles and pathways, Seagull Book inspected all walkways and to the extent any were not compliant with the ADA and its accompanying Accessibility Guidelines, such walkways were extended to comply.[38]  Seagull Book also modified the operable parts of the bathroom door hardware (removing superfluous non-conforming hardware), so the only remaining hardware was operable with one hand and does not require tight grasping, pinching, or twisting of the wrist with no more than 5 pounds of operable force.[39]

---

[35]     *Laidlaw*, 528 U.S. at 190.
[36]     Wheeler Declaration at ¶¶ 6-11.
[37]     *Id*.
[38]     Wheeler Declaration at ¶ 8.
[39]     *Id*.

Moreover, Seagull Book has implemented a procedure whereby it will ensure that its locations are audited for ADA violations and any violations found will be remedied.[40]  Seagull Book undertook these immediate actions, investigation, remediation, and ongoing monitoring, because it desires to make the Springville Seagull Book, and all of its Seagull Book locations, fully accessible to all of its customers, including those with a disability.  The change to the walkway aisles and bathroom hardware are permanent and unlikely to recur, particularly given the compliance audits.  Burningham's claims are, therefore, moot because there is no longer a live case or controversy.

### C.  The Alleged ADA Violations Cannot Be Reasonably Expected to Recur.

The standard established by the U.S. Supreme Court for determining if a defendant's voluntary conduct moots a plaintiff's claim is whether or not the conduct has made it so it could not reasonably be expected to recur.[41]  A court assesses, then, whether or not the violation can *reasonably* be expected to recur.  In *Tandy v. City of Wichita*, plaintiffs sued the city claiming, *inter alia*, the city's bus system was inaccessible to those with disabilities, claiming inoperable chair lifts, inaccessible routes, lack of Braille on schedules and directories, and failure by drivers to call out stops.[42]  In its mootness analysis, the Tenth Circuit held that where the changes are "permanent in nature" and "foreclose a reasonable chance of recurrence," plaintiffs' claims can be mooted.[43]  The court held that where the city equipped all of its buses with wheelchair lifts, altered the routes to be accessible to all, and trained its drivers to deploy lifts at all stops for disabled riders, the city had eliminated any reasonable likelihood of recurrence and

---

[40]     Wheeler Declaration at ¶¶ 10-11.
[41]     *Laidlaw*, 528 U.S. at 189.
[42]     380 F.3d 1277, 1281-82 (10th Cir. 2004).
[43]     *Tandy*, 380 F.3d at 1291.

mooted plaintiffs' claims.[44]  Thus, where architectural alterations (albeit mobile ones) were made to remediate the violations and policies and training were provided to employees, on appeal, the Tenth Circuit affirmed the lower court's mootness determination.

Similarly, in *Bacon v. Walgreen Co.*, the plaintiff alleged architectural barriers, *e.g.*, that security sensors at the pharmacy's exit were too close together to allow access for a wheelchair.[45]  Walgreens immediately widened the security sensors and bolted them to the floor.[46]  Plaintiff then claimed the sensors would have to be moved within five years when the store updated its carpeting, allowing for the chance of recurrence.[47]  The court was unmoved by plaintiff's speculations:

> Even assuming *arguendo* that the sensors will need to be moved for re-carpeting five years hence, plaintiff's assertion that the access barrier will recur is speculative at best. Notably, plaintiff offers no reason whatsoever why defendant would wish to position the sensors in a narrower width, and plaintiff offers no evidence suggesting that Walgreens intends to move the sensors.[48]

The speculative nature of the recurrence, along with the utter lack of proof of Walgreens's desire to reverse the repairs, caused the court to dismiss the claims as moot.[49]

Further, in *Nat'l Alliance for Accessability, Inc. v. Walgreen Co.*, the plaintiff alleged ADA violations involving parking spaces, entrance access, paths of travel, and restroom facilities.[50]  In response, Walgreens made required repairs and enlisted professionals to ensure that the store would remain ADA-compliant.[51]  Walgreens's remediation included installing

---

[44]     *Id.*
[45]     91 F. Supp. 3d 446, 448-49 (E.D.N.Y. 2015).
[46]     *Id.* at 450.
[47]     *Id.* at 452.
[48]     *Id.*
[49]     *Id.* at 452-53.
[50]     2011 WL 5975809, at *1 (M.D. Fla. Nov. 28, 2011).
[51]     *Id.*

5

electric door openers on restrooms, placing insulating wrap around pipes in the restrooms, and installing ADA-compliant hardware on the restroom stalls.[52]  "Because Walgreens has invested substantial resources to make its store ADA-compliant, it would be unreasonable to think that Walgreens would remove the improvements or otherwise violate the ADA after the case is dismissed."[53]  Where a company invests resources, such as financial resources and ongoing monitoring protocols, to remediate alleged ADA violations and makes structural changes, it is unreasonable to believe the company would reverse its course and re-violate the ADA.  Seagull Book has invested resources to remediate the alleged ADA violations, has established an ongoing monitoring procedure, and has no interest in reversing course.

*Tandy, Bacon,* and *Nat'l Alliance for Accessibility* are but a few of the cases nationwide where courts have dismissed ADA claims as moot after the defendant remediated the alleged violations.[54]  In each of the cited cases, the court held the plaintiff's claims moot due to the voluntary remediation by the defendant of the complained-of structural violations.

Here, Seagull Book dispatched its facilities team and remediated the claims made in the Complaint.  As detailed *supra* in section II.B., Seagull Book expanded walkways and removed superfluous, non-conforming bathroom door hardware (it already had conforming bathroom door

---

[52]     *Id.* at *3.

[53]     *Id.*

[54]     *See, e.g. Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) ("[A]lleged discrimination cannot reasonably be expected to recur because structural modifications are unlikely to be altered in the future."); *Norkunas v. Seahorse NB, LLC*, 2011 WL 1988799, at *6 (M.D. Fla. May 23, 2011) (where the court denied injunctive relief and attorneys' fees where defendant voluntarily remediated the ADA violations prior to trial), *aff'd,* 2011 WL 5041705 (11th Cir. 2011); *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone."); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130-31 (C.D. Cal. 2005) (where court held that the installation of grab rails by defendant rendered moot plaintiff's complaint alleging an ADA violation due to a lack of grab rails).

hardware installed).[55]  As in *Bacon,* now that the structural alterations have been made, there is absolutely no incentive for Seagull Book to go back and reverse the changes, and there is no reasonable belief that Seagull Book desires to violate the ADA in the future.

In order to overcome mootness, the plaintiff must show that there is a *reasonable* likelihood of recurrence. Where Seagull Book has expended time and financial resources to make the changes inside the store, it is unreasonable to believe that, with no incentive present to do so, Seagull Book would reverse the updates merely so it can go back to violating the ADA. Additionally, any argument that the violations *could* recur at some future point is purely speculative and absurd, particularly given the established ongoing monitoring.[56]

Each of Burningham's violation allegations under his single cause of action, violation of the ADA, relate to architectural barriers. The walkway aisles and bathroom door hardware are permanent alterations where a violation will not recur.[57]  Thus, there is no chance for the violations to recur because Seagull Book immediately remediated issues, where remediation was warranted, and has implemented ongoing auditing of its various locations to ensure compliance.

In summary, Seagull Book has no incentive to expend even more resources to return the structures to their previous state, but, in fact, has all the incentive to leave them in their ADA-compliant state permanently.  Seagull Book rendered Burningham's claims moot by immediately remediating the alleged ADA violations and meeting the stringent standard of proving that the structural changes are not reasonably expected to recur.

---

[55]     Wheeler Declaration at ¶¶ 7-8.
[56]     *See Bacon*, 91 F. Supp. 3d at 452.
[57]     *See Bacon*, 91 F. Supp. 3d at 452-53; *Nat'l Alliance for Accessibility*, 2011 WL 5975809, at *3.

**III.    BURNINGHAM DOES NOT HAVE STANDING TO MAINTAIN HIS CLAIMS.**

    **A.    Standing Standard.**

In order for a federal court to exercise subject matter jurisdiction, all plaintiffs must meet

well-settled standing requirements:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally
> protected interest that is both (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical. Second, there must be a causal
> connection between that injury and the challenged action of the defendant – the
> injury must be 'fairly traceable' to the defendant, and not the result of the
> independent action of some third party. Finally, it must be likely, not merely
> speculative, that a favorable judgment will redress the plaintiff's injury."[58]

"A challenge to a plaintiff's standing to bring a particular claim is properly raised in a

12(b)(1) motion to dismiss for lack of subject-matter jurisdiction."[59]   The Tenth Circuit is clear

that ADA "testers" must establish standing independent of their status as a tester:

> This court has held . . . that testers have standing to sue under Title II of the ADA.
> We believe the same is true to Title III of the ADA. . . . Thus, anyone who has
> suffered an invasion of the legal interest protected by Title III may have standing,
> regardless of his or her motivation in encountering that invasion. However, the
> fact that 'testing standard' exists under Title III does not displace the general
> requirements of standing. Like any plaintiff, a tester must demonstrate that she
> has indeed suffered a cognizable injury in fact that will be redressed by the relief
> sought."[60]

More specific to this case, "[w]hen prospective relief – such as an injunction – is sought,

'the plaintiff must be suffering a continuing injury or be under a real and immediate threat of

---

[58]    *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (internal citations
omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (where U.S.
Supreme Court asserted the same three requirements).

[59]    *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293
(D. Colo. 2016).

[60]    *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211
(10th Cir. 2014) (internal citations and quotation marks omitted) (emphasis added).

being injured in the future."[61]  Whether future injury is likely or not in ADA Title III cases can be evaluated by the following:

> In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have been guided by: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) plaintiff's frequency of travel near defendant.[62]

In this case, Burningham acknowledges that he is a "tester" for ADA investigative purposes.[63] Despite his status as a tester, Burningham must still meet the three primary requirements for standing, which he does not.

### B. Burningham Has Not Suffered a Concrete and Particularized Injury Where He Cannot Establish Standing Independent of His Tester Status.

#### 1. Burningham Lacks Standing Because He is Not Likely to Return.

Those plaintiffs who identify as ADA "testers" are required to meet traditional standing requirements, but importantly, must prove that the injury is "continuing" or be under a "real and immediate threat of being injured in the future."[64]  In determining whether a future injury is likely or not, courts can take guidance from California courts, which have evaluated thousands of Title III ADA cases. This Court, thus, should evaluate (1) the proximity of the store to Burningham's residence, (2) Burningham's past patronage of the Springville Seagull Book, (3) the definitiveness of Burningham's plans to return to the location, and (4) Burningham's

---

[61]    *Abercrombie*, 765 F.3d at 1211 (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004)).
[62]    *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1163 (C.D. Cal. 2005).
[63]    Compl. at ¶ 14.
[64]    *Abercrombie*, 765 F.3d at 1211.

frequency of travel near defendant.[65]  "Courts have found that a serial plaintiff's extensive

litigation history can undercut a professed intent to return."[66]

Clearly, the boilerplate language in the complaint that "Plaintiff avers that Plaintiff

intends to visit Defendant's PPA several times per year in the near future[,]"[67] is merely an

attempt to sidestep a motion to dismiss.  However, this is not sufficient to overcome Seagull

Book's motion to dismiss.  The Tenth Circuit has held that "[although] testimony of an intent to

use [services] 'several times per year' suggests a concrete, present plan . . ." sufficient to

establish likelihood of future injury, in the same case, the court held that "[s]peculative,

'someday' intentions do not support standing to seek prospective relief."[68]  Burningham's visit to

the Springville Seagull Book along his "tester route," coupled with the complaints filed against

other Seagull Book locations, which are also along tester routes, and his visits to over 100 other

businesses, renders speculative any such claim of intent to patronize Seagull Book in the future.

Burningham's actions also illustrate a different intention.  In 2017 alone, Burningham has

filed 120 ADA Title III complaints against businesses in Utah. These actions undermine any

intent to return to Seagull Book for the purpose of enjoying the goods and services offered by

Seagull Book.  For example, on May 15, 2017 (the same day Burningham claimed he visited

Springville Seagull Book), Burningham claims he visited 19 businesses in one day, all for the

purpose of enjoying "the goods and services offered at the PPA[s]."[69]  Given that Burningham

---

[65]     *Molski*, 405 F. Supp. 2d at 1163.

[66]     *Id*. at 1164; *see Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2004) (where court determined that a serial litigant's professed intent to return to all fifty-four properties he had sued was "simply implausible" and determined he lacked standing as a result).

[67]     Compl. at ¶¶ 16, 49.

[68]     *Tandy*, 380 F.3d at 1284.

[69]     Compl. at ¶ 12 and complaints filed in the following cases: *Burningham v. Utah Del*, 2:17-cv-00765; *Burningham v. Barber Brothers Springville*, 2:17-cv-00766; *Burningham v. Art*

has spent the past seven months visiting more than 120 businesses, and visits each establishment only once, often months before the complaint is filed, it is not reasonable to believe that the independent, or even dual purpose, of visiting these establishments is to enjoy the offered goods and services, or that future patronage is likely.

Thus, Burningham's boilerplate claim that he intends to visit the Springville Seagull Book "several times per year" rings hollow and Burningham lacks standing because he cannot satisfy the requirement that there be an actual injury that is either continuing or threatened in the future because he has no actual intention of returning to the Springville Seagull Book.

### 2. Burningham Lacks Standing Because He is Not the Real Party in Interest.

Further, although Burningham is listed as the plaintiff in each of the 120 cases filed, he is not the real party in interest because LMFS is the entity orchestrating these lawsuits and similar lawsuits by other attorneys representing serial plaintiffs, and LMFS and these attorneys are receiving settlement funds achieved in leveraged settlements.

LMFS has a busy recent history with federal courts throughout the United States, but particularly in Arizona and New Mexico. In New Mexico, the chief magistrate judge recommended that all cases like this be dismissed and sanctions be levied against the parties and

---

*City Coffee*, 2:17-cv-00767; *Burningham v. Rod Works Springville*, 2:17-cv-00769; *Burningham v. Beauty Systems Group*, 2:17-cv-00770; *Burningham v. Beauty Systems Group*, 2:17-cv-00770; *Burningham v. Peking Grill*, 2:17-cv-00771; *Burningham v. Springville Plaza I*, 2:17-cv-00778; *Burningham v. Payless ShoeSource*, 2:17-cv-00780; *Burningham v. MDC Coast 6*, 2:17-cv-00781; *Burningham v. Bullfrog International*, 2:17-cv-00790; *Burningham v. D&D Design Concepts*, 2:17-cv-00791; *Burningham v. Love's Travel Stops & Country Stores*, 2:17-cv-00792; *Burningham v. Harrison et al*, 2:17-cv-00793; *Burningham v. Springville Plaza II*, 2:17-cv-00794; *Burningham v. CBOCS West*, 2:17-cv-00807; *Burningham v. MMP Springville*, 2:17-cv-00808; *Burningham v. RS Legends*, 2:17-cv-00809; *Burningham v. Billings Distribution*, 2:17-cv-00810; and *Burningham v. Mekong Café II Thai Cuisine*, 2:17-cv-00811. In every complaint filed by Burningham against various defendants, this phrase appears in paragraph 12.

attorneys.[70]  In Arizona, a Maricopa County Superior Court judge dismissed with prejudice more

than 1,000 lawsuits in February 2017 brought by Advocates for Individuals with Disabilities,

LLC ("AID"), an entity backed by LMFS.[71]  LMFS states it is "dedicated to providing

specialized services to attorneys focusing on ADA litigation."[72]  However, in various cases in

Arizona and New Mexico, courts found that LMFS was not assisting attorneys; rather, LMFS

was paying attorneys $100 per case filed (along with a $50 payout to plaintiffs for each case

filed) and performing all of the work behind the scenes.[73]  The New Mexico court noted that

"LMFS played such an extensive role in these cases that it virtually ran the litigation from start

to finish."[74]  LMFS finds its plaintiffs by posting advertisements on services like Craigslist.[75]

     In *Carton*, the chief magistrate of the New Mexico federal district court recommended

that the chief judge of the court "dismiss these cases with prejudice as malicious because they

---

[70]    *See Carton v. Carroll Ventures, Inc.*, 1:17-cv-00037 (D.N.M. 2017), Proposed Findings and Recommended Disposition ("New Mexico Recommendation"), Docket No. 39, filed July 10, 2017; *see also Advocates for Individuals with Disabilities LLC v. Home Depot USA Inc.*, 2:16-cv-01003 (D. Ariz. 2016).

[71]    Court drops more than 1,000 'frivolous' accessibility suits, Arizona attorney general says, Arizona Republic (Feb. 18, 2017), http://www.abc15.com/news/local-news/investigations/exclusive-confidential-contract-exposes-serial-suers-financial-operation; Dave Biscobing, EXCLUSIVE: Confidential contract exposes serial suers' financial operation, ABC 15 Arizona (May 12, 2017), http://www.abc15.com/news/local-news/investigations/exclusive-confidential-contract-exposes-serial-suers-financial-operation; Press Release, Arizona Attorney General, Judge Dismisses More Than 1,000 Lawsuits Targeting Small Businesses (February 17, 2017), https://www.azag.gov/press-release/judge-dismisses-more-1000-lawsuits-targeting-small-businesses.

[72]    Website of LMFS, http://litmanco.com/ada-litigation.html.

[73]    *See* New Mexico Recommendation, at 23 ("[Plaintiff] was paid $50 by LMFS for each filed ADA case. Attorney [] was paid $100 by LMFS for each filed ADA case. LMFS provided Attorney [] with all "staff work" and costs – including creation of a website, receptionist, telephone, e-mail, a driver, paralegal and consulting services by LMFS attorneys – and was to be reimbursed for such expenses out of any recovery.").

[74]    New Mexico Recommendation, at 23 fn.4; *see also Carton*, Dockets 39-1 through 39-3 for contracts between the parties to that action.

[75]    *Id*. at 4.

were primarily filed for an improper purpose.  The Court there concluded that [the attorney in the

cases] and LMFS are using the judicial process to harass Defendants into settlements to obtain

financial gain for [the attorney] and LMFS and not to remedy ADA violations that served as

barriers to individuals with disabilities in accessing goods and services."[76]  A California court

succinctly summarized similar "cottage industries":

> The ability to profit from ADA litigation has given birth to what one Court
> described as "a cottage industry." *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d
> 1278, 1280-81 (M.D. Fla. 2004). The scheme is simple: an unscrupulous law firm
> sends a disabled individual to as many businesses as possible, in order to have
> him aggressively seek out any and all violations of the ADA. Then, rather than
> simply informing a business of the violations, and attempting to remedy the
> matter through "conciliation and voluntary compliance," a lawsuit is filed,
> requesting damage awards that would put many of the targeted establishments out
> of business. Faced with the specter of costly litigation and a potentially fatal
> judgment against them, most businesses quickly settle the matter. The result of
> this scheme is that "the means for enforcing the ADA (attorney's fees) have
> become more important and desirable than the end (accessibility for disabled
> individuals)." *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D.
> Fla. 2004). Serial plaintiffs, like Molski, serve as "professional pawn[s] in an
> ongoing scheme to bilk attorney's fees." *Rodriguez*, 305 F. Supp. 2d at 1285. It is
> a "type of shotgun litigation [that] undermines both the spirit and purpose of the
> ADA." *Brother*, 3312 F. Supp. 2d at 1375.[77]

New Mexico, like Utah, is in the Tenth Circuit, and its cases, as well as the Arizona

cases, provide value to this Court in providing a detailed description of how LMFS operates with

each of its attorneys and plaintiffs.  The relevance to the instant matter is that plaintiff

Burningham and his attorney, Attorney Studebaker, are LMFS recruits and affiliates.

Undersigned counsel for Seagull Book is also counsel of record for Seagull Book in

another alleged ADA matter, wherein LMFS is using a different plaintiff and different counsel,

---

[76]   *Id*. at 25 (making recommendations on *in forma pauperis* reference).
[77]   *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 863 (C.D. Cal 2004).

but the scheme is otherwise almost identical.[78]  The plaintiff in that matter is the aforementioned serial plaintiff Mr. Kelley, a disabled man (in a wheelchair, like Mr. Burningham) and the attorney representing Mr. Kelley is James K. Ord ("Attorney Ord").

Like Mr. Burningham, Mr. Kelley has filed 111 ADA Title III complaints against various Utah businesses since the beginning of 2017, which are very similar (and in many instances, the same), as those filed in this matter.[79]  The connections between Attorney Ord and Attorney Studebaker demonstrate that they are essentially different in name only on these ADA matters, and that these matters are being run by LMFS.  They utilize almost identical complaints.[80]  Their correspondence is substantively identical.[81]  They both have utilized the same paralegal Ashley Iannacone ("Ms. Iannacone"), who responds to email to counsel – Ms. Iannacone is an LMFS employee who has been involved in LMFS-related ADA litigation in at least Arizona, New Mexico, Nevada, and also Utah.[82]

Notably, Attorney Ord admitted the affiliation with LMFS.  In the Seagull Book-Kelley matter, undersigned counsel tried multiple times to contact Attorney Ord via phone.  However, Attorney Ord's telephone goes to a message, instructing callers to use his email instead (as does Mr. Studebaker's).  He does not respond to his email, rather, it is responded to by LMFS employee Ms. Iannacone (who also answers email for the other attorneys who file serial ADA claims, like Attorney Studebaker).  Counsel for Cafe Rio, who has been sued several times by

---

[78]  *Kelley v. Seagull Book & Tape, Inc. d.b.a. Seagull Book*, Civ. No. 2:17-cv-00717.
[79]  For a list of Mr. Kelley's ADA related matters filed in 2017, *see* Exhibit D.
[80]  *Cf.* Compl. and the complaint filed in *Kelley*, Civ. No. 2:17-cv-00717, attached as Exhibit E; *cf.* also complaints filed in the matters identified on Exhibit B and those filed in the matters identified on Exhibit D.
[81]  *Cf.* correspondence between undersigned counsel and Attorney Ord and Attorney Studebaker, attached as Exhibit F.
[82]  *See* discussion below.

Mr. Kelley for ADA violations, was, however, able to get Attorney Ord on the phone.  In that phone call, Attorney Ord admitted that he has an affiliation with LMFS.[83]

During the telephone conference with Attorney Ord,[84] Attorney Ord made multiple admissions that he is working with LMFS on his various ADA cases.[85]  Attorney Ord stated:

> I was contacted by [another attorney bringing these types of claims, Jonathan] Felt and his – and Litigation Management both. And they asked me if I would take over Felt's cases because he didn't want to be associated with it.[86]

Further, Attorney Ord admitted his ongoing relationship with LMFS:

> I, personally, before I got involved with Litigation Management, I went down to their facilities. I followed their process. I saw what value they were putting into it. I saw that they're worth every dime of their fee. And then I went and made sure, double-checked everything, and I looked at the cases that AID filed in Arizona and I looked at the cases that were going on with Sharon [Pomeranz, the attorney in Carton] in New Mexico, and *in spite of all of that, I still chose to use Litigation Management as my vendor*.[87]

The matter at hand is almost certainly being directed by LMFS in a manner likely identical to their modus operandi with Mr. Kelley and Attorney Ord, and that has been done with others in Arizona and New Mexico – where Burningham and Attorney Studebaker are merely the faces of the lawsuit, while LMFS directs the entire litigation.   Similar to the Attorney Ord-Kelley relationship, Attorney Studebaker is Burningham's counsel for every single one of the 120 matters filed in his name.[88]  It is completely reasonable to presume Attorney Studebaker and Mr. Burningham entered into LMFS agreements identical to those in the *Carton* litigation in

---

[83]     Telephone Call Between Ms. T. Mickell Jimenez and James K. Ord, III ("Call Transcript"), at 12-13, attached hereto as Exhibit G.

[84]     The call was initiated by Cafe Rio's counsel after Cafe Rio requested a courtesy extension to respond and Kelley's counsel refused.

[85]     Call Transcript, at 7:21-24, 9:13-16, 12:22-13:6.

[86]     *Id*. at 9:13-16.

[87]     *Id*. at 12:22-13:6 (emphasis added).

[88]     *See* the complaints filed in those matters identified on Exhibit B.

New Mexico, and the Kelley litigation in Utah, because the Complaint in this case is virtually identical to the complaints filed in the Kelley matters and the *Carton* matter in New Mexico.[89]

Moreover, LMFS's paralegals' involvement in these cases ties Burningham and Attorney Studebaker to the LMFS cases. During the same aforementioned telephone call with Attorney Ord, Attorney Ord acknowledged that Ms. Iannacone was involved in the LMFS Nevada ADA litigation, stating: "[F]or instance, Ashley [Iannacone]. Ashley to my understanding is not handling the Nevada cases anymore because she's been assigned to me and I have her [captive] at least until I get my new guy up in training."[90]

In various cases in at least three states, including in this case and in the cases brought against Seagull Book by Attorney Ord, Iannacone sent virtually identical emails on behalf of Attorney Studebaker. This is consistent with Cafe Rio's experience where it received the same email in the *Zimmerman* case in Nevada as it received in the Utah cases. Iannacone sent the referenced email using the email address ashley@nevadaada.com to Clyde Snow & Sessions.[91] In a New Mexico case, Iannacone sent the same email to B+H Investments, LLC, using the email address ashley@newmexicoada.com.[92] As noted above, in Utah, Iannacone uses the same email this time using the email address: ashley@utahadalaw.com or ashley@utahadaadvocates.com

---

[89]     Carton, Complaint, Docket No. 1, filed January 13, 2017, attached as Exhibit H. *See also* Kelley Complaint, attached as Exhibit E. Other than names, addresses, and different claims for the locations, the Burningham and Kelley Complaints are identical to each other. The Burningham and Kelley Complaints differ from the Carton Complaint, in that the Burningham and Kelley Complaint include four additional paragraphs, changes to the names, addresses, language regarding claims, and pronouns, and a slight change in section headings, but the remainder of the Complaints are identical to Carton.

[90]     Call Transcript, at 13:7-11.

[91]     Email from Ashley Iannacone, attached hereto as Exhibit I. Ms. Wendy Shaw, to whom the email is directed, is a paralegal at Clyde Snow & Sessions.

[92]     *See* Ex. J to the Savers Motion to Dismiss, Docket No. 5-11, filed June 28, 2017 attached hereto as Exhibit I.

(depending on whether she is responding for Attorney Ord or Attorney Studebaker).[93]  Notably, the exact same language was also sent to Seagull Book by Iannacone on behalf of Mr. Kelley,[94] an experience shared by other Utah defendants (Cafe Rio received it on three separate occasions on behalf of two other Utah plaintiffs – Mr. Kelley and Tammy Shelton – and two different attorneys – Jonathan Felt and Attorney Ord – in three different cases).[95]  Though these emails were sent to multiple defense counsels in multiple cases involving multiple plaintiffs and multiple plaintiffs' attorneys, they were identical in their language.  Except for the one instance Seagull Book is aware of where counsel for Cafe Rio was able to get on a call with Attorney Ord, the response has always been – as part of the identical email – that "[w]e prefer to perform all communication via email and hope you will accept this electronic communication and respond in kind[,]" followed by the settlement demand.[96]

The LMFS agreements, Attorney Ord's admissions of the affiliation with LMFS, the nearly-identical complaints across multiple states, and the identical substantive makeup of emails across paralegals, various attorneys, and at least five plaintiffs, establish that LMFS, and not Burningham or Attorney Studebaker, is operating this cottage industry in Utah, and LMFS is the one "party" set to benefit financially from this lawsuit. This lawsuit is identical – in form and function – to those brought in Arizona (that were summarily dismissed) and New Mexico (that will very likely be dismissed) that received the scorn of federal courts.  Thus, Burningham does not have standing because he is not the real party-in-interest in this litigation.

---

[93]     Email from Ashley Iannacone, attached hereto as Exhibit K; *see also* Ex. I to Savers Motion to Dismiss, Docket No. 5-10, filed June 28, 2017, attached hereto as Exhibit L.
[94]     Email attached hereto as Exhibit M.
[95]     *See e.g.,* Emails from Laurie Reiter, attached hereto as Exhibit N.
[96]     *See* Exhibits K and M.

## IV.  BURNINGHAM IS NOT ENTITLED TO ATTORNEYS' FEES BECAUSE HE IS NOT A PREVAILING PARTY WHERE HIS CLAIMS HAVE BEEN MOOTED AND HE LACKS STANDING.

The ADA requires that a party be a prevailing party in order to qualify for attorneys' fees. "In any action … commenced pursuant to the [ADA], the court . . . in its discretion, *may* allow the *prevailing party* . . . a reasonable attorney's fee, including litigation expenses, and costs[.]"[97] A "prevailing party" is defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . [a]lso termed *successful party*."[98]  The U.S. Supreme Court accepted Black's definition when it said: "Our respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."[99] Thus, in order to be a "prevailing party" and be entitled to attorneys' fees under the ADA, a party must have been the victor of the case in one way or another. A dismissal does not render the plaintiff a prevailing party.

Prior to *Buckhannon*, various circuits endorsed what was known as the "catalyst theory" that "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."[100]  However, the U.S. Supreme Court has since expressly held the catalyst theory is not an appropriate vehicle to award fees where a motion to dismiss is granted.[101]

---

[97]     42 U.S.C.A. § 12205 (emphasis added).

[98]     BLACK'S LAW DICTIONARY 1145 (7th ed. 1999) (emphasis in original).

[99]     *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603 (2001).

[100]     532 U.S. at 601; *see J&J Anderson, Inc. v. Erie*, 767 F.2d 1469, 1474-75 (10th Cir. 1985); *Am. Constitutional Party v. Munro*, 650 F.2d 184, 187-88 (9th Cir. 1981); *Nadeau v. Helgemoe*, 581 F.2d 275, 279-81 (1st Cir. 1978).

[101]     *Buckhannon*, 532 U.S. at 610; *see also Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1108 n.33 (11th Cir. 2011) ("The ADA's attorney fee provision requires a party to prevail in order to receive an attorney's fee[].  The Plaintiffs cannot recover here on the

18

Burningham is not and cannot be a prevailing party where Burningham's claims have been rendered moot by Seagull Book's remediation and he lacks standing to even bring the claims. Thus, Burningham is not entitled to attorneys' fees where he is not the prevailing party.

### CONCLUSION

Based on the foregoing, the Complaint should be dismissed. Burningham's claims are moot because Seagull Book immediately remediated the alleged violations germane to it, and there is no need for injunctive relief. Seagull Book has met its burden in proving that it cannot be reasonably expected that the violation will recur. Further, Burningham does not meet requirements for standing. Finally, Burningham is not entitled to attorneys' fees because he is not and cannot be a prevailing party under the ADA.[102]

Seagull Book respectfully moves this Court to dismiss all of Burningham's claims as moot pursuant to Fed. R. Civ. P. 12(b)(1) and 19.

DATED this 15th day of September, 2017.

WOOD BALMFORTH LLC

/s/ Jared M. Asbury
Mary Anne Q. Wood
Jared M. Asbury
60 East South Temple Street, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
mawood@woodbalmforth.com
jmasbury@woodbalmforth.com
*Attorneys for Defendant Seagull Book & Tape, Inc.*

---

ground that they prevailed, for they did not.  Nor can they recover their attorney's fees for serving as a 'catalyst,' i.e., that they caused [defendant] to implement the changes they sought.").
[102]     Seagull Book reserves the right to request fees from this Court.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September, 2017, I filed with the Clerk of Court a

true and correct copy of the foregoing **MOTION TO DISMISS AND MEMORANDUM IN**

**SUPPORT** via the CM/ECF System which sent notification to:

> STUDEBAKER LEGAL SERVICES, P.C.
> Michael P. Studebaker
> 333 2nd Street, Suite 16
> Ogden, UT 84404
> mike@utahadaadvocates.com

/s/ Jared M. Asbury

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | ABA Journal Article. |
| Exhibit B | List of Burningham ADA Title III cases filed in 2017. |
| Exhibit C | List of Shelton ADA Title III cases filed in 2017. |
| Exhibit D | List of Kelley ADA Title III cases filed in 2017. |
| Exhibit E | Complaint in *Kelley v. Seagull Book & Tape, Inc. d.b.a. Seagull Book, Civ. No. 2:17-cv-00717.* |
| Exhibit F | Correspondence between J. Asbury and Attorney Ord and Attorney Studebaker. |
| Exhibit G | Transcript of telephone call between Ms. T. Mickell Jimenez and James K. Ord. |
| Exhibit H | Complaint in *Carton v. Carroll Ventures, Inc.*, 1:17-cv-00037 (D.N.M. 2017). |
| Exhibit I | Email from Ashley Iannacone to Wendy Shaw of Clyde Snow & Sessions. |
| Exhibit J | Ex. J to the Savers Motion to Dismiss, Docket No. 5-11, filed June 28, 2017. |
| Exhibit K | Email from Ashley Iannacone to Jared Asbury, dated August 11, 2017. |
| Exhibit L | Ex. I to Savers Motion to Dismiss, Docket No. 5-10, filed June 28, 2017. |
| Exhibit M | Email from Ashley Iannacone to Jared Asbury, dated August 21, 2017. |
| Exhibit N | Emails from Laurie Reiter. |